Filed 6/27/14  In re Brianna S. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re Brianna S. et al., Persons Coming Under the Juvenile Court Law. | |
| | D064984 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ14451A-B) |
| v. | |
| OLGA S. et al., Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Imhoff, Judge.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant Olga S.

Law Offices of Marc E. Mitzner, Marc E. Mitzner; and David W. Paulson for Defendant and Appellant Robert S.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, Daniela Davidian and Lisa Maldonado, Deputy County Counsel for Plaintiff and Respondent.

Ryan M. McGlinn for Respondent Emily and Ted S.

Dependency Legal Group of San Diego, Tilisha Martin, Carolyn Levenberg and Jessica B. Smith for the Minors.

INTRODUCTION

Robert S. (father) and Olga S. (mother) appeal a judgment terminating their parental rights to their two minor children and ordering adoption as the children's permanent plan. Father contends the juvenile court prejudicially erred by failing to grant his request to continue the selection and implement hearing because it deprived him of an opportunity to present evidence establishing the application of the beneficial parent-child relationship exception to adoption. (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(i).)[1] Mother joins in this contention and further contends we must reverse the judgment terminating her parental rights if we reverse the judgment terminating father's parental rights.

We conclude the court did not abuse its discretion in denying father's continuance request. We, therefore, affirm the judgment.

---

[1]     Further statutory references are also to the Welfare and Institutions Code.

2

BACKGROUND

Father has a lengthy history of alcohol abuse, which has resulted in a continual cycle of inpatient treatment and relapse. When the minors were seven and two, they became wards of the court after father relapsed and they had no one to care for them. At the time, mother was incarcerated in another county awaiting sentencing for multiple offenses. She was later sentenced to three and a half years in state prison and then paroled to a federal detention facility pending deportation proceedings.

The court placed the minors in the care of nonrelative extended family members, to whom the court subsequently granted de facto parent status. Although father received reunification services and visitation, he continued to struggle with alcoholism and relapsed multiple times. The quality and quantity of his visits with the minors cycled up and down with the state of his sobriety. When he was sober, he had regular telephone contacts and unsupervised visits. When he relapsed, he had sporadic telephone contacts and supervised visits.

The quality and quantity of father's telephone contacts and visits were also harmed by his persistent solicitation of verbal and physical expressions of affection from the minors, which they were uncomfortable giving him. Approximately a year into the reunification process, the minors began strongly resisting the telephone contacts and visits. When visits occurred, the older minor treated father disdainfully and the younger minor exhibited physical aggression, disrespect, and defiance. The visits provoked anxiety and anger in the older minor and behavioral problems in the younger minor.

3

At the 18-month review hearing, the court discontinued father's reunification services and scheduled a selection and implementation hearing. After the reunification services ended, the minors were permitted to choose whether to visit with father and they declined further visits. By the selection and implementation hearing date, the older minor had not visited with father for approximately six months and the younger minor had not visited with father for approximately five months. The younger minor spoke badly about father and the older minor did not wish to speak about him at all. On the other hand, the older minor spoke a great deal about the de facto parents and appeared very bonded to them.

Also by then, the minors did not count on father to meet their needs. According to the San Diego County Health and Human Services Agency's (the Agency) social worker, their relationship with their father was "the type of relationship one would have with an extended family member with whom they have had problems . . . ."

Regarding their potential adoption, the older minor expressly desired to be adopted by the de facto parents and did not desire to have any further contact with either of her natural parents. When she lived with her natural parents, she felt they were the children and she was the parent. She wanted the opportunity to be a child and to no longer have to worry about taking care of them. The younger minor was too young to fully understand the concept of adoption, but regarded the de facto parents as her parents and desired for them to remain her parents.

At the outset of the selection and implementation hearing, mother's counsel requested the court continue the hearing. Father's counsel joined in the request, stating

4

father was unable to attend the hearing "for health reasons." The agency's counsel, minors' counsel and de facto parents' counsel all objected to or opposed the continuance request. After considering the statutory criteria, the court denied the request. As to father, the court explained, "[T]his is a terribly difficult time for him, but he did receive notice and there's no further information other than perhaps difficulty in the emotions for him not being present. And given the age of the children, they do deserve a decision."

The hearing proceeded and father's counsel remarked during his opening statement, "[I]t is emotional for [father] and he has struggled for a long time, both with his addiction and with . . . his feelings about this process, and he does want to be a father to these children and his heart is still as the father no matter how it turns out today . . . ." Later in the hearing, when given an opportunity to cross-examine the Agency's social worker about any of the information in the Agency's reports admitted into evidence, father's counsel indicated he had no questions for her. Then, when given an opportunity to present affirmative evidence on father's behalf, father's counsel stated, "I have no evidence or witnesses to present today, so father rests." Later, during his closing arguments, father's counsel argued for a permanent plan of guardianship rather than adoption and remarked, "I would love . . . to have something today to give the Court that would speak to the preservation of [father's] parental rights and to have him here today to testify on his own behalf. . . . I want these children to have a stable life as much as anybody else does. And absent a witness to give you today to mitigate your position on the permanency of placement, whatever the Court thinks is in the best interest of these children we would certainly ascend [*sic*] to . . . ."

At the conclusion of the hearing, the court terminated father and mother's parental rights. In reaching its decision, the court found by clear and convincing evidence the minors were likely to be adoptable, they were adopted, adoption was in their best interest, and termination of mother and father's parental rights would not be detrimental to them under any of the provisions in section 366.26, subdivision (c)(1)(B)(i) through (vi).

On the last point, the court expounded, "The father has had regular and consistent contact and visits with the [minors] at least up until most recently when at their request and with the input from their therapists those visits began to end to the point where they did not occur. [The minors] do recognize their father as their father. The father has always expressed his sincere concern and love for each of the [minors]. But I think the sad reality in this case is that both mother and father have been burdened by their own personal challenges and travails that has led them to be significantly, significantly absent from the [minors'] lives for prolonged periods of time. [¶] The [minors] reacted very negatively to those life experiences. They were put in an environment that was healthy for them that they grew to trust, and because of that, the natural progression of attachment occurred. And it's a process that we all recognize. It's a process that we must encourage both parents had wished to take—have that opportunity with the [minors] but again they were simply absent. [¶] So at this point in time the Court cannot find that it would be in [the minors'] best interest to promote or facilitate a father-child relationship and does find that whatever benefit that may have been conferred upon the [minors] with whatever contact they had with their father is greatly outweighed by their need for stability and placement which can obviously be achieved through adoptive placement."

6

Father contends the court prejudicially erred by failing to grant his request to continue the selection and implementation hearing because it deprived him of an opportunity to present evidence supporting the beneficial parent-child relationship exception to adoption in section 366.26, subd. (c)(1)(B)(i).  We disagree.

A juvenile court may continue a hearing at a parent's request, provided the continuance is not contrary to the minor's interests.  (§ 352, subd. (a).)  "In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements."  (*Ibid.*)  Furthermore, "[c]ontinuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance."  (*Ibid.*)  Courts have interpreted the good cause requirement to be an express discouragement of continuances.  (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 585.)  "The court's denial of a request for a continuance will not be overturned on appeal absent an abuse of discretion."  (*Ibid.*; accord, *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 604-605.)

Father has not established an abuse of discretion in this case because he has not established both that he had good cause for a continuance and that a continuance would not have been contrary to the minors' interests.  Father requested the continuance for

unspecified health reasons.[2] Father did not provide proof of or elaborate on these reasons even after the court indicated the lack of elaboration weighed against granting a continuance. Father also did not indicate how much time he would need to resolve his health concerns. More importantly, he did not argue or attempt to demonstrate the continuance would not have harmed the minors. As the court noted and the record amply demonstrates, the minors suffered considerable angst because of father's failed reunification efforts. They desired and had waited a long time for permanence and stability in their lives. Given the substantial weight the court had to accord their interests and the general disfavor of continuances in juvenile dependency cases, we have no trouble concluding the court properly exercised its discretion to deny father's continuance request.

Even if the court had abused its discretion, father has not shown the error prejudiced him. At the selection and implementation hearing, the court must terminate parental rights and free a child for adoption if it determines by clear and convincing evidence the child is adoptable within a reasonable time, and the parents have not shown termination of parental rights would be detrimental to the child under any of the statutory exceptions to adoption found in section 366.26, subdivision (c)(1)(B)(i) through (vi). (*In re C.F.* (2011) 193 Cal.App.4th 549, 553 (*C.F.*).) The beneficial parent-child relationship exception applies if the parent proves termination of parental rights would be detrimental to the child because the "parents have maintained regular visitation and contact with the

---

[2] He states in his opening brief he was in the hospital; however, there is no evidence of his hospitalization in the appellate record.

child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

"This court has interpreted the phrase 'benefit from continuing the relationship' in section 366.26, subdivision (c)(1)(B)(i) to refer to a 'parent-child' relationship that 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent[-]child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' [Citation.]

"A parent must show more than frequent and loving contact or pleasant visits. [Citation.] 'Interaction between natural parent and child will always confer some incidental benefit to the child. . . . The relationship arises from day-to-day interaction, companionship and shared experiences.' [Citation.] The parent must show he or she occupies a parental role in the child's life, resulting in a significant, positive, emotional attachment between child and parent. [Citations.] Further, to establish the [beneficial parent-child relationship] exception the parent must show the child would suffer detriment if his or her relationship with the parent were terminated." (*C.F.*, *supra*, 193 Cal.App.4th at p. 555, fn. omitted.)

9

Here, father contends that had the court granted him a continuance, he "would have presented evidence of his efforts to continue without compromise the visitation and telephonic communication he previously enjoyed with both minor children," he "would have demonstrated to the court the degree of endearment and bonding he previously enjoyed with the minor children," and he "would have presented evidence of the affection the minor children had with him, even calling him 'Dad' and 'Father.' " However, he does not explain how such evidence would have altered the outcome.

The court acknowledged father's love for and efforts to reunify with the minors. The court also acknowledged the minors knew father as their father. Nonetheless, by the time the selection and implementation hearing occurred, the minors had chosen not to visit or have telephone contacts with father for many months and expressed no desire to have any visits or contacts with him in the future. Well before the visits and contacts ceased, minors viewed them negatively, resisted having them, and behaved poorly when they occurred. Father did not cross-examine the Agency's witness or otherwise contest this adverse evidence below nor does he indicate on appeal he would have been able to contest this evidence had the court given him a continuance. Whatever his relationship might have been with his children in the past, it was neither parental nor positive by the time the selection and implementation hearing occurred. Accordingly, we conclude it is not reasonably probable the outcome of the selection and implementation hearing would have been more favorable to father absent the claimed error. (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*); *In re Celine R.* (2003) 31 Cal.4th 45, 59-60 [applying the *Watson* harmless error standard to juvenile dependency matters].)

10

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

HALLER, J.

11